IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  10-cv-03016-REB-MJW

MARLA  D.  SNEED,

Plaintiff,

v.

PNC BANK, NATIONAL ASSOCIATION,
AMERICAN UNITED MORTGAGE,
FIRST COLORADO MORTGAGE CORPORATION,
NATIONSBANC,
BANK OF AMERICA,
RESIDENTIAL ACCEPTANCE NETWORK,
NATIONAL CITY MORTGAGE,
BANK OF THE WEST, and
ANY JOHN DOE AND/OR JANE DOE THAT MAY APPEAR,

Defendants.

## RECOMMENDATION ON
## MOTION OF DEFENDANTS PNC BANK, NATIONAL ASSOCIATION, AND NATIONAL CITY MORTGAGE TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED.R.CIV.P. 12(b)(6) (Docket No. 31)

**MICHAEL J. WATANABE**
**UNITED STATES MAGISTRATE JUDGE**

This case was referred to the undersigned pursuant to an Order of Reference to United States Magistrate Judge issued by Judge Robert E. Blackburn on January 3, 2011 (Docket No. 11).

**PLAINTIFF'S ALLEGATIONS IN THE COMPLAINT**

The pro se plaintiff, Marla D. Sneed, asserts the following in her Complaint (Docket No. 1).  Plaintiff purchased her home, located at 3819 S. Truckee Way, Aurora, Colorado 80013, on November 25, 1998, for $184,000, of which she borrowed

2

$171,000.00 from American United Mortgage. The loan was then assigned another loan number with defendant First Colorado Mortgage Corporation. Plaintiff was subsequently instructed to make her payments to defendant NationsBanc on February 1, 1999, which plaintiff claims "clearly evidences securitization (and MERS) of my loan and in violation of law." (Docket No. 1 at 8). Plaintiff then re-financed the loan on January 30, 2004, with defendant Residential Acceptance Network Inc. with an Adjustable Rate Rider with a loan amount of $184,100.00. The loan servicer was defendant Bank of America, which later changed to defendant National City Mortgage, which later sold it to defendant PNC Bank, National Association, "again clearly evidencing continued securitization (and MERS) of my loan in violation of law." (Docket No. 1 at 9). On October 4, 2007, a second mortgage was taken out in the amount of $59,000 with defendant Bank of the West "using the alleged equity (uncertain as to ownership due to securitization (and MERS) in my home as collateral." (Docket No. 1 at 9).

Plaintiff asks this court to award her clear title to the property because she has been in possession for over twelve years and the "property is being foreclosed upon without evidence of the existence of the Original Promissory Note signed by the lender and the borrower. Evidence of loan securitization is present as well as Mortgage Electronic Registration System (MERS) having no record of a mortgage transaction ever taking place." (Docket No. 1 at 2). "The Original Promissory Note does not exist as is evidenced by the fact that it was not produced by any of the Defendants when asked to produce it in writing twice by the Plaintiff. The chain of ownership has been broken and therefore it is impossible for any of the Defendants to legally foreclose on

3

this property." (Docket No. 1 at 2).

Plaintiff has received written information saying that the original promissory note with her signature and that of the lender no longer exists. She has also received "official information" regarding the fact that the loan was securitized. Plaintiff is concerned that there is no sum certain regarding the pay-off amount of her loan. She has requested information regarding the use of MERS having no record of a mortgage transaction ever taking place. She has only received a summary of her payments for the previous four years and thus is missing payment information for the period of November 1998 to the present showing all money she has paid to date for this mortgaged property. None of the materials she has received represent an official officer of the bank, and she must know that she is dealing with an official of the lender and not some third party representative. Because there is no legal promissory note signed by the lending institution officer and plaintiff, there is no contract, and therefore no loan, and therefore no debt. If the original promissory note were in existence, defendants' attorney or their agent PNC Bank, National Association, would have provided the note to evidence the debt.

In November 2009 plaintiff filed bankruptcy and "signed a legal document under duress that stated that PNC Bank, National Association, was the lender for [her] property . . ." (Docket No. 1 at 7). At that time she had no idea that there was no original promissory note, nor that there was no evidence of debt, which she did not find out about until May 2010 "when the unethical behaviors of the mortgage industry came to [her] understanding." (Docket No. 1 at 7). She has also discovered that the CEO of PNC Bank, North America, had already been under investigation in 2002 for artificially

4

inflating PNC's profit, and PNC was put under a six-month watch.

Defendant PNC Bank, National Association, wishes to foreclose and auction the property, but none of the defendants have proved they own the property. If defendants do not have an original promissory note, then plaintiff has been defrauded.

"Securitization of a loan is illegal." (Docket No. 1 at 10). Plaintiff has requested information about whether her loans have been securitized, but she has received no answer. Plaintiff has also asked for the real identity of the true holder of the note and has asked for a complete chain of title to the ownership of the original promissory note and mortgage, payment application histories, and documentation as to the securitization.

Plaintiff had adjustable rate mortgages (ARMs), which are illegal due to the lack of a sum certain on the promissory note for purposes of payoff. Consequently, the provision for an ARM causes the contract to be vague, non-specific, uncertain, and thus void.

In addition to clear title, plaintiff is asking for reimbursement in the amount of $190,206.77, which is how much she has paid into this property since the inception. That sum includes the total of her first mortgage ($162,893.14), the total paid at the original closing ($13,512,97), the total at her refinancing closing ($3,869.66), and the total paid for her second mortgage ($9,931.00). (Docket No. 1 at 6). In addition, she is seeking $50,000.00 in punitive damages "for the emotional strain and duress this entire process has caused me to endure." (Docket No. 1 at 7).

**MOTION TO DISMISS**

Now before the court for a report and recommendation is the Motion of

Defendants PNC Bank, National Association, and National City Mortgage to Dismiss Plaintiff's Complaint Pursuant to Fed.R.Civ.P. 12(b)(6) (Docket No. 31).[1] Plaintiff filed a response (Docket No. 39), and the moving defendants filed a reply (Docket No. 40). The court has considered these motion papers as well as the court's file and applicable Federal Rules of Civil Procedure and case law. The court now being fully informed makes the following findings, conclusions of law, and recommendation that the motion be granted.

Defendants PNC Bank, National Association, and National City Mortgage n/k/a PNC Mortgage, a division of PNC Bank (collectively hereinafter referred to as "PNC"), moves for dismissal of the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) on the following grounds: (1) plaintiff cannot state a claim for failure to produce the original promissory note; (2) plaintiff's argument that the Note is invalid because it was not signed by the lender fails as a matter of law; (3) plaintiff's claim that bundling mortgage loans for security is illegal fails to state a claim for which relief may be granted; and (4) plaintiff cannot state a claim that the note is invalid due to the ARM.

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in the plaintiff's favor. Morse v. Regents of the Univ. of Colo., 154 F.3d 1124, 1126-27 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996). A motion to dismiss pursuant to Rule 12(b)(6) alleges that the

---

[1] As of the date of this report and recommendation, plaintiff has not filed proof of service upon any of the other defendants, nor have any of these other defendants appeared.

6

complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) if it does not plead 'enough facts to state a claim to relief that is plausible on its face.'" Cutter v. RailAmerica, Inc., 2008 WL 163016, at *2 (D. Colo. Jan. 15, 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Bell Atlantic Corp., 550 U.S. at 555 (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. "[A] plaintiff must 'nudge [] [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss. . . . Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting Bell Atlantic Corp., 127 S. Ct. at 1974).

Plaintiff is proceeding *pro se.* The court, therefore, reviews plaintiff's pleadings and other papers liberally and holds them to a less stringent standard than those drafted by attorneys. Trackwell v. United States Government, 472 F.3d 1242, 1243 (10th Cir. 2007). See Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro se* complaint to less stringent standards than formal pleadings drafted by lawyers). However, a *pro se* litigant's conclusory allegations without supporting factual averments

7

are insufficient to state a claim upon which relief can be based. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged or that a defendant has violated laws in ways that a plaintiff has not alleged. See Associated Gen. Contractors of Cal., Inc. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983); Whitney v. New Mexico, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (court may not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf); Drake v. City of Fort Collins, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

Here, this court finds that the plaintiff has failed to state a claim upon which relief can be granted. First, with regard to plaintiff's claim that her debt and the foreclosure are invalid because she has not been provided with the original promissory note, the moving defendants correctly assert the following. Notably, plaintiff does not dispute that she signed the Note or that she is in default for failure to make payments under the terms of the Note. Instead, she claims that the debt is invalid because she allegedly has not been shown the original promissory note. In Colorado, however, there is no requirement that the original promissory note be produced to initiate or complete a non-judicial foreclosure proceeding. See § 38-38-101(1)(b)(II), C.R.S. Instead, a qualified holder may initiate foreclosure proceedings by producing a certified copy of the promissory note so long as the qualified holder agrees to certain indemnity language and conditions. See § 38-38-101(1)(b)(II), (2)(a), C.R.S. The Complaint here contains no allegation that PNC did not follow the proper procedure for initiating foreclosure

8

proceedings. Furthermore, pursuant to Colorado law, presentation of the original signed note is not necessary to enforce the instrument. See § 4-3-309(a), C.R.S. (enforcement of lost, destroyed, or stolen instrument). Instead, the creditor must establish only the terms of the note and the right to enforce the note. See § 4-3-309(b), C.R.S. In addition, to the extent plaintiff alleges a violation of the Fair Debt Collection Practices Act, if the debt is disputed, it requires only that the debt collector obtain a verification of a debt or a copy of a judgment and provide the debtor with a copy of that verification or judgment. See 15 U.S.C. § 1692g(b). Finally, it appears that plaintiff may be asserting that her debt is invalid because she has not been shown the original promissory note with respect to her first mortgage on the property, which was issued in November 1998. That note, however, is irrelevant with regard to the foreclosure because plaintiff subsequently refinanced that debt. For these reasons, there is no merit to plaintiff's claim that the debt is invalid because the original promissory note has not been produced.

Second, with regard to plaintiff's claim that the Note is invalid because it was not signed by the lender, the moving defendants correctly assert the following. Under the Colorado Uniform Commercial Code, the Note is a negotiable instrument, which does not need to be signed by the person to whom the Note is payable. A promissory note is a "negotiable instrument" if the Note is made payable to an identified person or to "bearer" and contains an unconditional promise to pay a fixed amount of money on demand or at a definite time. See § 4-3-104(a), C.R.S. The "maker" of the note is "the person who signs or is identified in a note as a person undertaking to pay" the obligation. § 4-3-103(a)(5), C.R.S. The note is payable to the identified person or the

bearer and may be enforced by the holder of the note or a non-holder in possession of the instrument who has the rights of a holder. See §§ 4-3-109(b), 4-3-301, C.R.S. Furthermore, under the Colorado statute of frauds, a written contract or credit agreement need only be signed by the person against whom enforcement is sought. See §§ 38-10-124(2) (credit agreements), 38-10-112(1) (other agreements), C.R.S. For these reasons, there is no merit to plaintiff's claim that the Note is invalid because it does not contain the lender's signature.

Third, plaintiff's claim regarding the legality of securitization of mortgage loans also fails to state a claim. Plaintiff has made no factual averments which even demonstrate that her loan(s) were securitized. Her averments concerning this claim are pure speculation, and as stated above, "a plaintiff's obligation to provide the 'grounds' of [her] 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Bell Atlantic Corp., 550 U.S. at 555 (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

Fourth, plaintiff has also failed to state a claim upon which relief can be granted with respect to her claim that the Note is invalid and unenforceable because it has an adjustable interest rate. As correctly asserted by the moving defendants, Colorado law expressly permits interest to be stated in an instrument as a variable rate. See § 4-3-112(b), C.R.S. ("Interest may be stated in an instrument as a fixed or variable amount of money or it may be expressed as a fixed or variable rate or rates. The amount or rate of interest may be stated or described in the instrument in any manner and may require reference to information not contained in the instrument. If an instrument provides for

interest, but the amount of interest payable cannot be ascertained from the description, interest is payable at the judgment rate in effect at the place of payment of the instrument and at the time interest first accrues."). Here, the Note sets forth the method for calculating the interest rate, the maximum rate that may be charged, the first date on which the interest rate may adjust, and the period of time between adjustments. (Defs.' Ex. A at § 4).[2] Therefore, plaintiff has failed to state a claim regarding the ARMs.

The court notes that in her Response, the plaintiff raises other rambling arguments or claims which are not contained in the Complaint. Plaintiff, however, may not effectively amend her pleading by alleging new claims or theories in her response to the motion to dismiss. See In re Qwest Comm. Intern., Inc., 396 F. Supp.2d 1178, 1203 (D. Colo. 2004).

**WHEREFORE**, for the foregoing reasons, it is hereby

**RECOMMENDED** that the Motion of Defendants PNC Bank, National Association, and National City Mortgage to Dismiss Plaintiff's Complaint Pursuant to Fed.R.Civ.P. 12(b)(6) (Docket No. 31) be **granted**. It is further

**RECOMMENDED** that the claims against the unserved defendants be dismissed

---

[2] "[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." GFC Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997). "If the rule were otherwise, a plaintiff with a deficient claim could survive a motion to dismiss simply by not attaching a dispositive document upon which the plaintiff relied. Moreover, conversion to summary judgment when a district court considers outside materials is to afford the plaintiff an opportunity to respond in kind. When a complaint refers to a document and the document is central to the plaintiff's claim, the plaintiff is obviously on notice of the document's contents, and this rationale for conversion to summary judgment dissipates." Id.

11

pursuant to 28 U.S.C. § 1915(e)(2)(B) ("Notwithstanding any filing fee, or any portion therefor, that may have been paid, the court shall dismiss the case at any time if the court determines that– . . . the action . . . fails to state a claim on which relief may be granted . . . .").

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. Makin v. Colorado Dep't of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Date: September 7, 2011　　　　　　　　　　s/ Michael J. Watanabe
　　　　　Denver, Colorado　　　　　　　　　Michael J. Watanabe
　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge